## UNITED STATES v. ZEPHYR ELECTRIC CO.

**No. 4966.**—Invoice dated Berlin, Germany, February 28, 1938
Entered at St. Paul, Minn. March 29, 1938
Entry No. A–1143

(Decided July 8, 1940)

*Webster J. Oliver,* Assistant Attorney General (*Richard F. Weeks, Joseph E. Weil,* and *Daniel I. Auster,* special attorneys), for the plaintiff.
*John J. McKasy* for the defendant.

DALLINGER, Judge: This collector's appeal to reappraisement involves the question of the dutiable value of certain vacuum cleaner parts exported from Germany and entered at the port of St. Paul,

Minn., on March 29, 1938. The said parts were invoiced and entered at the lump sum of 100 reichsmarks and were appraised as entered.

At the first hearing, held at Minneapolis on August 3, 1939, before Evans, Judge, the following colloquy took place:

Mr. WEEKS. If the Court please, this is a collector's appeal on some vacuum cleaner parts which were imported from Germany under an invoice which contains a great number of different items. The Government claims that the appraisement which was at the entered value is only in error as to some of the items. Those items are—I am trying to give my adversary the benefit of the Government's claim—some bakelite covers which on the invoice have German names.

Judge EVANS. If you will call attention to them on the invoice and have the witness mark them some way, we will be able to identify them.

Mr. WEEKS. The first item in question is 10 "pertinaxbekleidungen". The next item which the Government claims should be reappraised is 10, in English they are armatures, and in German and on the invoice they appear as "Anker m. Kugellager". Another item is that invoiced as "100 Staubbeutel ohne Ring". I don't know what that means in English, but we will find out. The next item is 80 of those same bakelite covers, the name of which I gave before, "pertinaxbekleidungen",. I guess that's all.

Now, the unit prices do not appear on the invoice or on the entry, but we will prove the dutiable unit values. I will bring them out to show that there is an increase over the dutiable appraisement.

The Government's witness, W. F. Micka, assistant acting appraiser of merchandise at the port of St. Paul, apparently in accordance with the trial judge's suggestion, marked the particular items referred to by Government counsel with a black pencil mark appearing at the left of the four designated items on the invoice herein. He then testified that he had examined and appraised said merchandise at the lump sum of 100 reichsmarks for the entire shipment, the importer claiming that the parts in question were replacement parts for defective vacuum cleaners.

The witness was then shown a form of declaration accompanying the consulated commercial invoice of a subsequent shipment of different quantities of merchandise by the same exporter to the same importer, which document was offered and admitted in evidence as Collective Exhibit 1 by the trial judge over the objection of counsel for the plaintiff. In my opinion the exhibit in question has no probative value in determining the issue in the instant case.

Counsel for the Government then offered in evidence a report purporting to be signed by Roy V. Fox, Treasury representative at Berlin, Germany. Inasmuch, however, as the report in question was not certified, and there was no evidence of the validity of the Treasury representative's signature, the report was not admitted in evidence but was marked Collective Exhibit 2 for identification.

At a subsequent hearing, held at Minneapolis on February 21, 1940, before me, the report in question, having been certified in the interim, was duly admitted in evidence by me as Collective Exhibit 2.

The following are extracts from said report:

### EXPORT VALUE

The articles covered by the consular and proforma invoices in question cover spare parts for vacuum cleaners of regular manufacture by the exporter. Some of such parts are manufactured by the exporter, others are purchased by him from various manufacturers.

*Relationship, Exporter to Importer.*

The relationship between the exporter and the importer is stated to be that of seller and purchaser with the exclusive rights of purchase for the products of the manufacturer in question.

\*  \*  \*  \*  \*  \*  \*

The spare parts in question, being for minor repairs to the types of vacuum cleaners supplied to the importer in question, will neither be sold nor offered to other purchasers in the United States.

These spare-parts which have been delivered to the importer are not such as are classified in the illustrative literature of the manufacturer as "accessories"; such spare-parts are repair-parts, for the most part.

*Terms of Sale.*

The terms of sale granted the importer for such spare-parts as have been supplied him under cover of the proforma-invoices are free-of-charge for the purpose of repairing and maintaining in effective use the vacuum cleaners which have been previously delivered to him.  \*  \*  \*

The above remarks apply only to such small items as screws, washers, rubber rings, etc. which have too small value and which are requested in too small quantities to be invoiced.

For such items of a larger value, and for such accessories as have been forwarded under cover of the two consular invoices in question, a charge is made.

Then follows a list of various enumerated articles with the prices in reichsmarks, also the following statement:

The items covered by this and the following proforma invoice are partly produced by the exporter in his plant, and partly purchased from other manufacturers. The majority of such articles, being small and of slight value, are stated to be given away on the inland market to keep the apparatuses in repair.

*Some of the items listed are covered by purchase invoices from the manufacturers thereof, other items are taken from a list of parts-prices to the Amsterdam agent, while other items have been estimated by the exporter as the prices which would have been charged had the articles been sold in the inland market.* [Italics mine.]

\*  \*  \*  \*  \*  \*  \*

The above stated values for the various spare or repair-parts noted for the two proforma invoices given in detail are stated to be the net sales-prices thereof, should such articles be in all instances sold in the inland or export markets. \*  \*  \*.

Aside from the two shipments noted above, the exporter has received a similar shipment as of March 23rd, which was noted at RM. 70.00 in value on the declaration *although the merchandise was granted free of cost as in the present instance.* [Italics mine.]

\* \* \* \* \* \* \*

A further shipment dated April 5th was noted for the value of RM. 100.00 but is a gratis shipment of the same class as noted in detail above.

In my opinion Collective Exhibit 2 is so contradictory as to be of little or no probative value.

The Treasury agent states that he obtained the prices set forth in his report from purchase invoices from certain German manufacturers, a price list to the *Amsterdam agent* of the exporter, and an *estimate* by the exporter of prices which would have been charged if the articles had been sold in the foreign market. The last two certainly constitute no proper basis for determining foreign value.

On the entire record I find that the Government has not sustained the burden of overcoming the presumptive correctness attaching to the action of the appraiser. I therefore find the proper dutiable value of the merchandise in question to be the entered and appraised value thereof.

Judgment will be rendered accordingly.